ROYCRAFT *v.* NORTHVILLE–SIX MILE COMPANY.

VENDOR AND PURCHASER—BREACH OF LAND CONTRACT—DAMAGES—EVIDENCE.

> Finding of trial court in action for breach of contract to purchase land that such contract, which had been entered into without fraudulent inducement, was breached by defendant's failure to comply with the agreement without making objections to title or offering any other reason for noncompliance and that plaintiff was entitled to difference between what he had contracted to pay for the premises and amount defendant had promised to pay him *held,* supported by record.

Appeal from Wayne; McCree, Jr. (Wade H.), J. Submitted Oct. 14, 1959. (Docket No. 72, Calendar No. 47,965.) Decided January 4, 1960.

Case by Duane Roycraft against Northville-Six Mile Company, a Michigan corporation, for damages on breach of contract to purchase real estate. Judgment for plaintiff. Defendant appeals. Affirmed.

*L. Edwin Wenger,* for plaintiff.

*Kasoff & Young,* for defendant.

REFERENCES FOR POINTS IN HEADNOTES
55 Am Jur, Vendor and Purchaser §§ 509, 524.

BLACK, J.   Plaintiff sued defendant for breach of contract to purchase real estate. The case was tried to the court and resulted in an opinion of the trial judge holding plaintiff entitled to recover damages as claimed in the sum of $6,000. Defendant appeals and presents for review 2 questions. They follow:

"1. Did plaintiff, appellee, show that he was ready, willing and able to perform the obligations as seller under the preliminary agreement of sale with appellant, buyer?"

"2. In an action of assumpsit for breach of a preliminary agreement of sale, is plaintiff's measure of damages, the amount stipulated as liquidated damages, if such amount is not so large as to constitute a penalty?"

Upon review of the briefs and appendices, including appellants' supplemental appendix, we find that the trial judge has decided what in essence are pure questions of fact and that no substantial question of law has been brought to us for consideration. The opinion of the trial judge is both informative and comprehensive. It depicts the essential facts with clarity and arrives at conclusions which are fully justified by the proof. It follows:

"Plaintiff, under date of June 5, 1957, obtained an agreement to purchase the subject property from the title holder upon land contract calling for the sum of $22,000 to be paid as follows, $4,000 down and the balance within 5 years in semi-annual instalments of not less than $1,800 with 6% interest, and upon other terms as more fully appears from plaintiff's exhibit 1. This purchase agreement followed a course of dealings between plaintiff and the title holders during which time he had several options to purchase the said property.

"The court finds further that thereafter, on June 8, 1957, plaintiff contracted with defendant to sell defendant the subject property for the sum of

$28,000 on land contract calling for a down payment of $10,000 with the balance to be paid within 5 years from the date of execution in semi-annual instalments of not less than $1,800 at the rate of 6%, with conditions substantially those to be included in the contract by which he was to purchase same from title holders. This agreement was received in evidence as plaintiff's exhibit 6.

"This agreement also was entered into following a series of negotiations with defendant corporation through its officers and agents.

"Now, at this point the court expressly finds that there was no fraudulent misrepresentation relied upon to induce the making of this contract, having considered all the evidence and the relative position of the parties. The court expressly finds that the parties to this transaction on both sides were themselves and were represented by experienced real estate persons who had a degree of sophistication regarding land development which makes it unlikely that they were led into this agreement because of optimistic estimates of the land's potential.

"In any event, the finding of fact is that there was no fraud or misrepresentation to induce the making of plaintiff's exhibit 6.

"The court further finds that following a series of conversations a title commitment, marked defendant's exhibit 5, was secured and delivered to defendant's attorney on or about August 31, 1957. This title commitment was the second such document delivered, the first having been objected to by defendant's attorney. This title policy found title to be in the parties with which plaintiff had the agreement known as plaintiff's exhibit 1. This title policy referred to the wife of one of these parties who, it develops, was dead at that time, there having been received in evidence in this trial plaintiff's exhibit 11, being a certified copy of the record of her death prior to the date of execution of plaintiff's exhibit 1, exhibit 6, or the title policy referred to as defendant's exhibit 5.

"It will also be noted that the commitment read that the party to be insured was Bernard Edelman rather than defendant Northville-Six Mile Company. It appears from the trial that Bernard Edelman was one of the principal stockholders and officers of the Northville-Six Mile Company and conducted the negotiations, and that defendant's attorney, who objected to the first title commitment, did not request that the commitment be made in any other form.

"The court further observes that the actual policy to be issued pursuant to the commitment could in fact have been issued to defendant Northville-Six Mile Company had the parties requested same. The court does not find this to be a breach of the contract, plaintiff's exhibit 6, for failure on the part of the defendant to comply therewith.

"The court further finds that on or about September 30, 1957, defendant was notified by plaintiff that plaintiff was ready to consummate the agreement, or the deal, and that it was to be consummated in the following form, that there be deposited with the Manufacturers National Bank of Detroit by the owners a land contract running to plaintiff in fulfillment of plaintiff's exhibit 1. It will be noted that this contract after payment of down payment called for substantially the terms required by the contract to run from plaintiff to defendant under plaintiff's exhibit 6, and defendant was notified that upon payment of the down payment of $10,000 as required by plaintiff's exhibit 6, this contract which had been executed by the title holders, would then be delivered together with an assignment by plaintiff to defendant, said assignment having been executed and placed with the escrow agent, which the court finds would have complied with paragraph 1-D of plaintiff's exhibit 6, which provided that seller could assign a land contract with unperformed conditions substantially as set forth therein, in compliance with this agreement.

"The court further finds that defendant objected to the proposed closing date but did not at any time

notify plaintiff in writing of any particular defects claimed in the chain of title, and made several general objections without particularizing them. These several objections were not limited to the condition of the title and many were related to defendant's desire to renegotiate the contract to secure more favorable terms. However, Bernard Edelman, the president of defendant company and one of it's principal shareholders, stated that his corporation was at all times ready to close but did not because the title was not in proper order. This being the case, it would appear that under paragraph 4 of exhibit 6, written notice should have been given particularizing the defects to afford plaintiff seller the right to correct same. This not having been done and plaintiff having indicated his readiness to close, brings us to approximately November 8, 1957, when plaintiff notified defendant that he could no longer keep the deal open [and indicating closing should be before November 13, 1957].    *    *    *

"Defendant did not offer to close within that time or make objections to title as he was required to or offer any other reason for noncompliance, and thereafter plaintiff lost his opportunity to obtain the subject property and sues for his damages.

"The court finds that the proper measure of damages should be his expectancy under the contract which was plaintiff's exhibit 6, to be measured by the difference between what he expected to receive for the property, to wit, $28,000 and what it would cost him to acquire the property, to wit, $22,000, or $6,000, which is the sum for which the court finds a verdict for plaintiff."

I vote to affirm, with costs to plaintiff.

Dethmers, C. J., and Carr, Kelly, Smith, Edwards, Voelker, and Kavanagh, JJ., concurred.